1   Andrew S. Mansfield SBN 174556
    MANSFIELD LAW CORPORATION
2   2775 N. Ventura Road, Suite 201
    Oxnard, California 93036
3   Telephone:    (805) 642-6406
    Facsimile:    (805) 642-4648
4   amansfield@mansfield.law

5   Attorney for Debtor John Sperry Reynolds

6

7

8               UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

10

11
    John Sperry Reynolds,                    Case No. 9:16-bk-11042-DS
12
              Debtor in Possession,
13                                           Chapter 11

14                                           **INDIVIDUAL DEBTOR'S
                                             DISCLOSURE STATEMENT**
15

16                                           DISCLOSURE HEARING

17                                           Date:   May 22, 2018
                                             Time:   11:30 a.m.
18                                           Place: Courtroom 201
                                                    1415 State St.
19                                                  Santa Barbara, CA 93101

20                                           PLAN CONFIRMATION HEARING

21                                           TO BE SET

22

23

24

25

26

27

28

1
2

# I.
## INTRODUCTION

John Sperry Reynolds, an individual, is the Debtor and Debtor-in-Possession (the

"Debtor") in the above-captioned Chapter 11 bankruptcy case (the "Bankruptcy Case"). On June

6, 2016 (the "Petition Date"), the Debtor commenced the Bankruptcy Case by filing a voluntary

petition under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101 et seq., the

"Bankruptcy Code"). Chapter 11 allows the Debtor, the creditors or other parties in interest to

propose a plan of reorganization. A plan of reorganization may provide for the Debtor to

reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination

of both. Debtor leased real property and operated a gas station in Summerland, California, for

many years. Debtor sold that business to Summerland Market, Inc. and Elian Hanna. The

majority of the liability in this matter is the result of state court judgments related to the

operation and sale of the gas station. Debtor has worked as a real estate professional and

continued to do so after the sale of the gas station.

Debtor did not qualify as a small business debtor as defined in 11 U.S.C. § 101(51D) on

the date he filed for protection. Debtor's aggregate noncontingent liquidated debts were more

than $2,490,925.

The Debtor is the party proposing the Debtor's Chapter 11 Plan of Reorganization ("the

Plan") that was sent to you in the same envelope as this document. THE DOCUMENT YOU

ARE READING IS THE DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER

11 PLAN (the "Disclosure Statement").

The Plan provides for Debtor's reorganization by, in large part, quitclaiming his interest

in the real property located at 670 Romero Canyon Rd., Santa Barbara, California to secured

judgment creditors Summerland Market, Inc. and Elian Hanna, waiving his homestead

exemption in that real property, assisting in any objection to invalid or defective secured claims

recorded against that real property, and surrendering the already-distributed portion of his spendthrift charitable remainder trust to the secured creditors Summerland Market, Inc. and Elian Hanna. These creditors have superior rights to the funds held in suspense and distributed both by the recordation of the judgment lien and by an order of the California Superior Court that the funds from the charitable remainder trust not be distributed without their consent or further court order. That consent has been obtained through the terms of the proposed Chapter 11 Plan.

Debtor owes the John B. Reynolds Testamentary Trust $240,701.92. That amount is secured against Debtor's residence and subject real property. The lien securing that amount and the obligation are being released and the amount paid by payment from another trust, the Dorothy Reynolds Cox Trust, waiver of Debtor's interest in the distribution from that Trust, a release of the Dorothy Reynolds Cox Trust, and certain payments agreed to by the Trustee and Beneficiaries of the John B. Reynolds Testamentary Trust to secured creditors Summerland Market, Inc. and Elian Hanna. These provisions will be filed with the Court as a stipulated agreement between these parties. This description is not meant to provide a full description and does not completely describe the relationship of the trust payments, Debtor's interests, and the secured creditors. Please review the Plan carefully about the treatment of Class 1(b).

Debtor has committed all of his projected disposable income for the next five years to pay his remaining unsecured creditors. "Disposable income" is the Debtor's "current monthly income" less certain "reasonably necessary" expenses for his personal support or maintenance and expenses necessary to continue, preserve or make future income. Current monthly income does not include Social Security Act income and does not include non-estate spendthrift trust distributions.

Debtor will primarily fund the Plan by his regular monthly payments from his charitable remainder trust, set up by his mother, which is titled the Dorothy Reynolds Cox Charitable Remainder Trust #1 (hereinafter "CRT 1"). CRT 1 is to provide monthly payments to Debtor of

$5,182.67 per month until the CRT 1 is exhausted or Debtor predeceases the exhaustion of the CRT 1 corpus. Debtor provides that 25% of each distribution from CRT 1 when made, because it is a  trust subject to spendthrift protection, is provided for creditor claims. Debtor hereby dedicates $1,295.67 of each monthly payment for sixty (60) months to administrative claims that the parties have agreed will be paid after the confirmation of this Chapter 11 Plan and, after the payment in full of such approved claims, as specified herein, that monthly amount will be distributed pro rata to the general unsecured creditors in Class 6(b).

Debtor will live upon and use his Social Security benefit income, which he is now receiving, and which is not subject to creditor claims.

CRT 1 shall resume paying Debtor the amount of $3,887.00 on the next regularly scheduled trust distribution date following the effective date of this Chapter 11 Plan. That is the regular required monthly distribution less 25% for administrative and creditor claims.

Until the court-approved attorney's fees of Mansfield Law Corporation are paid, 100% of each monthly distribution (that is, the 25% of the monthly CRT 1 distribution in the amount of $1,295.67), shall be paid to Mansfield Law Corporation to pay for deferred administrative attorney's fees. The Debtor and bankruptcy estate counsel have agreed that Mansfield Law Corporation may be paid in this manner after the date of confirmation. This agreement was secured so that Mansfield Law Corporation would not object to confirmation given the inability of the Debtor to pay for attorney's fees on confirmation. The Trustee of the Dorothy Reynolds Cox Charitable Remainder Trust #1 shall make each such payment directly to Mansfield Law Corporation, 2775 N. Ventura Rd., Suite 201, Oxnard, CA 93036 until approved fees, less the $20,000 set aside from the cash collateral of Summerland Market, Inc., and Elian Hanna, as provided above, are paid. If the parties agree to stipulate to reduce the fees of Mansfield Law Corporation to $80,000, less the $20,000 paid from the cash collateral or set-aside from the funds otherwise due to Summerland Market, Inc. and Elian Hanna, it will take Debtor 46 months to

4

pay bankruptcy counsel the remaining $60,000. The exact portion of the remaining CRT 1 funds available to the general unsecured creditors will not be known until the court approves (or disapproves) a fee application from Mansfield Law Corporation.  On the above assumptions, $18,139.38 will be available to general unsecured creditors.

**The effective date of this Plan is the fifth business day following the date of the entry of the order of confirmation.  If a stay of the confirmation order is in effect on the date that would otherwise be the Effective Date, the Effective Date will be the first business date after that date on which no stay of the confirmation order is in effect.**

**A. Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1) WHO CAN VOTE OR OBJECT TO CONFIRMATION OF THE PLAN,

(2) WHAT THE TREATMENT OF YOUR CLAIM IS (WHAT YOU WILL RECIVE IF PLAN CONFIRMED), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN CHAPTER 7 LIQUIDATION,

(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

(5) WHAT THE EFFECT OF CONFIRMATION IS, AND

**(6) WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern. The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court (the "Court") will consider, at the hearing on the Disclosure Statement, whether this document is an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. The Debtor submits that the information set forth herein is complete and accurate to the best of his ability.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.  Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on [TO BE SET] at [TO BE SET] Pacific Standard Time, in Courtroom 201 of the United States Bankruptcy Court located at 1415 State Street, Santa Barbara, California 93101.

**2.   Deadline for Voting for or Against the Plan**

For the purposes of voting, Classes [ ] are impaired and therefore entitled to vote. Your ballot must be received by [TO BE SET], 2015, 4:00 p.m. Pacific Standard Time, or it will not be counted. Any impaired creditor wishing to vote must do so by timely executing the enclosed ballot and returning the executed ballot in the enclosed envelope to:

MANSFIELD LAW CORPORATION
Andrew S. Mansfield, Esq.
2775 N. Ventura Rd., Suite 201
Oxnard, CA 93036
Telephone: (805) 642-6406; Facsimile: (805) 642-4648
amansfield@mansfield.law

**3.   Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Debtor at the address listed in the upper left-hand corner of the first page of this Disclosure Statement so that they are received by the Court and the Debtor's counsel not later than [TO BE SET], 2018, at 4:00 p.m. Pacific Standard Time.

**4.   Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact:

Andrew S. Mansfield, Esq.
2775 N. Ventura Rd., Suite 201
Oxnard, CA 93036
Telephone: (805) 642-6406; Facsimile: (805) 642-4648
amansfield@mansfield.law

**C.  Disclaimer**

The financial data relied upon in formulating the Plan is based upon the Debtor's records which, unless otherwise indicated, are unaudited. The information contained in this Disclosure Statement is provided solely by the Debtor, unless otherwise stated. As set forth above, the

1  Debtor represents that everything stated in this Disclosure Statement is true and correct to the

2  Debtor's best knowledge. The Court has not yet determined whether or not the Plan is

3  confirmable and makes no recommendation as to whether or not you should support or oppose

4  the Plan.

5

6

7  **II.**
   **BACKGROUND**

8

9  **A. The Events Leading to Bankruptcy**

10      Debtor John Sperry Reynolds worked as a real estate agent in the Santa Barbara region

11  for many years.  He also owned and operated various businesses, one of which was Sperry

12  Butler, Inc., a California corporation ("SBI").  In or around April 2000, the late Rose T.

13  Robertson, in her capacity as original Settlor and Trustee of the Rose T. Robertson Trust ("the

14  Robertson Trust"), leased to SBI several commercial business premises commonly known as

15  2285 Lillie Ave., Summerland, California, with Debtor acting as individual guarantor for the

16  corporate Lessee, with the property being used as a fuel station/mini-mart.

17      In approximately January 2007, SBI subleased the gas station to Elian Hanna ("Hanna").

18  Hanna took possession of the leasehold in March 2007 and assigned his interests therein to

19  Summerland Market, Inc. a California corporation ("SMI"), which, since that time, has operated

20  a fuel station/mini-mart on the site. Several years after taking possession, Hanna/SMI sued SBI

21  and Debtor for rescission of their purchase contract and related sublease. Hanna/SMI also sued

22  for money damages for fraud and/or mistake.

23      The trial of the case was bifurcated into two parts: a "Phase I," jury trial portion, and a

24  "Phase II" equitable/declaratory relief portion. The jury trial portion was tried in

25  September/October 2013, with a judgment ultimately entered thereon on February 25, 2014.

26

27

28

The Robertson Trust sought damages for breach of the lease but the claims were denied by the jury.

After entry of the "Phase I" judgment, Hanna/SMI attempted to initiate an involuntary Chapter 11 bankruptcy proceeding in this Court against Debtor (*In Re John Sperry Reynolds*, Case No. 9:14-bk-10690-PC). That proceeding was ultimately dismissed by this Court.

The "Phase II" equitable/declaratory relief proceedings were completed in late 2015, and a Statement of Decision issued on January 27, 2016, followed by a Judgment on April 8, 2016. The judgment granted Hanna/SMI rescission of their original purchase and sublease agreements with SBI and/or Debtor and granted certain declaratory relief to the Robertson Trust.  At the time of the filing of this bankruptcy, counsel for the Robertson Trust had submitted a proposed order on a judgment notwithstanding the verdict awarding certain damages to the Robertson Trust and providing explanation of the month-to-month imposed tenancy.

Because of this litigation, Debtor faces various forms of liability from different judgments for various parties on multiple theories of recovery.   Only one judgment was recorded pre-petition making that judgment a potentially secured obligation.

Those judgments are:

1.      Judgment for Hannah/SMI and against Debtor in the amount of **$790,889** with interest at the rate of ten percent per year. Plaintiffs Summerland Market, Inc. and Elian Hanna had sued Debtor for **fraud, mutual mistake, and unilateral mistake**.  Debtor's former corporation, Sperry Butler, Inc. was a codefendant and judgment was also issued against the corporate entity.  Judge Colleen K. Sterne, in the Judgment on Special Jury Verdict, found that the verdict entitled plaintiffs to judgment against Debtor and his former corporation for fraud. The judgment was **recorded**.

2.      Hanna/SMI obtained a judgment for **$575,000** for **rescission**.  It was not recorded.  Debtor disputes that the award granting rescission is non-dischargeable.

3.      The order or orders pending but not issued at the time this case was filed included damages sought by the **Rose T. Robertson Trust** in the amount of

**$341,382.94**.  Debtor asserts that these damages do not give rise to a non-dischargeable obligation.

Three related trusts are at issues in this bankruptcy matter.  Each trust is discussed below.  One trust, an irrevocable trust settled by Debtor's mother, is meant to provide Debtor with a stream of income. Another trust advanced funds to Debtor to purchase his home and retains a secured lien and deed of trust.  A third trust, when settled, is slated to pay the note of the trust that provided Debtor a loan to purchase his residence.  Those funds are not to pass through Debtor's accounts but will be paid from trust to trust.  Each of these trusts is explained more fully below:

1. The **Dorothy Reynolds-Cox Charitable Remainder Trust # 1** ("CRT 1") is the trust that is meant to provide Debtor with a stream of income.  The trust contains a Spendthrift Clause. The trust pays an annuity of $5,000 per month in favor of Debtor.  The corpus is not estate property pursuant to 11 U.S.C. 541(c)(2). Debtor asserts that the distributions, including the now-overdue payments, are estate property. While the balance in this trust is approximately $595,000, the required monthly payments have been suspended for over six months due to a state court order requiring a further order of the Court prior disbursement.

2. Another related trust is the **Dorothy Reynolds-Cox Revocable Trust** ("DRC Trust").  This trust also contains a spendthrift clause. As mentioned, the distribution from this trust on behalf of Debtor is earmarked for direct payment by the Trustee to the John B. Reynolds Trust.  Funds are required to be paid directly and will not pass through the accounts of the Debtor.

3. The **John B. Reynolds Testamentary Trust** ("JBR Trust") is a trust set up by Debtor's father many years ago.  This trust is a secured creditor and provided a loan to Debtor to purchase the house.  That loan was recorded and the trust has a lien against the house.  Debtor is entitled to a small distribution from this trust (also subject to spendthrift provisions), but such distribution will be applied to the note held by the Trust.

**B. Significant Events During the Bankruptcy**

Debtor designed his reorganization around the legal conclusion that he could direct the CRT 1 Trustee to provide his monthly payment from that trust despite a state court order that the secured creditors Summerland Market, Inc. and Elian Hanna must provide consent, based on the state court and probate litigation, or that "an order of the court" issued to allow distribution.

Debtor believed that the distribution of funds from an already-established trust was not a probate issue but concerned the distribution of property and the division of trust property between estate and non-estate interests.  Debtor intended to use the distributions to fund his reorganization and negotiate a mutually beneficial plan concerning his residence.

The Court did not agree with Debtor and instead issued relief from stay for the state court matter, which the Court characterized as a probate matter, proceed. That state court action threatened the existence of trusts other than CRT 1. Secured creditors Summerland Market, Inc. and Elian Hanna sought to demonstrate that the trusts were not established properly and thereby cause the dissolution and redistribution, including tax consequences, for the DRC Trust and the JBR Trust.

Debtor sought to value the residence in order to determine whether the residence and its homestead were impaired by the judgment lien of secured creditors Elian Hanna and Summerland Market, Inc. That valuation hearing was delayed and then removed from calendar. Secured creditors Elian Hanna and Summerland Market, Inc. eventually stipulated that Debtor had a homestead exemption in his residence in the amount of $175,000.

Secured creditors Elian Hanna and Summerland Market, Inc. sued Debtor in an adversary proceeding for non-dischargeability of their judgment. Debtor eventually settled that action and agreed to the non-dischargeable status of that debt.

Debtor and the secured creditors have been involved in multiple rounds of court approved mediation, both in the adversary action, which concluded, and in this bankruptcy matter. As the result of many months of mediation, in multiple rounds, under the guidance of a skilled mediator, the Trustees of the CRT 1, DRC Trust, and the JBR Trust, as well as the beneficiaries thereof, the Debtor, and secured creditors Elian Hanna and Summerland Market, Inc. reached an agreement in principle in late March of 2018 and have separately executed a term sheet this very day, April 10, 2018, thereby allowing this Disclosure Statement to be filed and the Chapter 11

Plan to be proposed.

Many of the material agreements of the settlement term sheet are incorporated into the Chapter 11 Plan this disclosure provides. To the extent necessary, the parties will file stipulations embodying those terms to place those terms in the record and on the docket of this matter.

**C. Claims Bar Date**

The claims bar date for filing proof of claim was set for May 26, 2017. For governmental units, the bar date was December 21, 2016. Nine claims have been received. The IRS subsequently reduced its claim to $0.00.

**D. Property Values**

The only real property at issue is Debtor's residence at 670 Romero Canyon Rd., Santa Barbara, CA 93108. The appraisal conducted by secured creditors Summerland Market, Inc. and Elian Hanna valued the residence at $2,300,000. At the other end of the continuum of values, Wells Fargo, the lender who holds the first deed of trust, valued the property at only $1,560,000 in its now-continued motion for relief from the automatic stay.

In essence, the value is not material to the Chapter 11 matter. Debtor has waived his homestead exemption. Wells Fargo will be paid in full as a secured creditor. The second deed of trust, in favor of the JBR Trust, is being voluntarily retired and satisfied, the tax liens will be paid as needed and required, the attorney's fee lien may be set aside or paid partially, and the balance of the equity, which will not satisfy its judgment, is being transferred to secured creditors Elian Hanna and Summerland Market, Inc. The amount not satisfied is also secured against the already-made CRT 1 trust distributions. That security provides secured creditors Summerland Market, Inc. and Elian Hanna with another $82,000 in recovery. The reamainder of the claim will be paid treated as a general unsecured claim.

The Debtor receives great relief in the form of the payments and terms in the Chapter 11 Plan constituting payment in full to Summerland Market, Inc. and Elian Hanna. By facilitating the turnover of the property, already subject to their security interest through the judgment, the secured creditors have agreed to consider the non-dischargeable balance of the judgments as satisfied and to take appropriate actions to indicate payment in full.

Administrative fees will be paid from CRT 1 distributions and a portion of the funds subject to the security of Elian Hanna and Summerland Market, Inc. This will allow much of the attorney's fees, subject to Court approval, to be paid at other than the moment of confirmation. General unsecured creditors do get a small distribution in the final fourteen months of the five year plan. The UST will be paid in full based on quarterly requirements. Debtor will be allowed to emerge living on his Social Security Act income and 75% of each CRT 1 distribution until the fund is exhausted or the Debtor predeceases that date. Should the Debtor die before completion of Plan, the balance of the Trust corpus, by operation of law, is taken from the Plan and provided to the charitable remainder beneficiary.

**IV.**
**SUMMARY OF THE CHAPTER 11 PLAN**

**A.  What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classified claims and interests in various classes according to their priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are

automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, Debtor, as proponent of the Plan, has not placed administrative expenses in a class.

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  Holders of administrative expenses under 11 U.S.C. § 507(b) are paid before other administrative expenses.

**1. Professional Fees.** Professional fees may only be paid upon application to and approval by the court. The Debtor will pay professional fees in the amount of $20,000 when approved by the court and the balance approved by the court over sixty payments, with administrative claims, in the form of approved attorney's fees, paid before other claimants, including general unsecured creditors. Attorney Andrew S. Mansfield, counsel for Debtor-in-Possession, has agreed to these terms in place of payment in full on confirmation of the Plan. The source of the initial $20,000 from distributed trust funds is detailed herein.

The total amount of projected professional fees is subject to Court approval and review after submission by counsel.

**2. Other Administrative Claims.** The Debtor will pay other claims allowed under § 503(b) and entitled to priority under § 507(a)(2), United States trustee fees, in full on the Effective Date (although expenses arising and paid in the ordinary course of Debtor's financial affairs may be paid as due), except to the extent that a holder of these claims agrees to other terms.

**3. Tax Claims.** Debtor has the following pre-petition tax obligations.

| Name / Party | Amount of Expense | Secured | Priority | General Unsecured |
|---|---|---|---|---|
| Franchise Tax Board (Proof of Claim 2a) | $6,576.65 | $1,208.77 | $684.08 | $4,683.80 (Only this Amount is Subject to Class 6(b)) |
| State Board of Equalization (Proof of Claim 4) | $126,461.15 | $126,218.82 | $0.00 | $242.33 (Only this Amount is Subject to Class 6(b)) |

**4. Involuntary Gap Period Claims pursuant to § 507(a)(3).** The Debtor will pay claims allowed under § 502(f) in full on, or as soon as practicable after, the Effective Date except to the extent a holder of such claim agrees to other terms.

Most administrative claims have been paid from the DIP Loan pursuant to Stipulation and on approval of the Court.

**5. Total Administrative and Priority Claims.** The following chart lists Debtor's administrative claims and their treatment under the Plan:

| Name / Party | Amount of Expense | Source of Approval or Authority | Treatment |
|---|---|---|---|
| Mansfield Law Corporation, Andrew S. Mansfield | $91,737 (estimated). This balance is net of pre-petition retainer. | Employment approved by Order of the Court. | Subject to Court approval. Due on Effective Date. |
| Office of the United States Trustee | $650 per quarter (estimated). | 28 U.S.C. § 1930(a)(6) | Quarterly fees shall be paid until final decree is entered. |

| Name / Party | Amount of Expense | Secured | Priority | General Unsecured |
|---|---|---|---|---|
| Franchise Tax Board (Proof of Claim 2a) | $6,576.65 | $1,208.77 | $684.08 | $4,683.80 |
| State Board of Equalization (Proof of Claim 4) | $126,461.15 | $126,218.82 | $0.00 | $242.33 |

Total Remaining Administrative Claims (Estimated): $220,498.67. Note that this amount

includes $127,427.59 already secured against Debtor's residence.

## IV.
## SECTION 111(b) ELECTION

Under Section 1111(b) of the Bankruptcy Code, a partially secured creditor may elect to

be considered a full recourse creditor and to receive payment based on the total amount of its

allowed claim.  However, under section 1129(a)(7)(B), the recovery of a secured creditor who

makes such election may be limited to payment of the full amount of its allowed claim without

interest, which may result in a lower payment amount than what the Debtor otherwise proposes.

Holders of secured claims are advised to consult their own counsel to evaluate whether or not it

is in their best interest to make the election.  Federal Rule of Bankruptcy Procedure 3014 states

that such election must be made prior to the conclusion of the hearing on the disclosure

statement.  If this election is made by any claimholder, Debtor proposes to make required

payments to such claimholder over the term of 60 months.

## V.
## CLASS 3: PRIORITY CLAIMS

These impaired classes include allowed unsecured claims entitled to priority under § 507

(except administrative claims under § 507(a)(2), involuntary gap period claims under § 507(a)(3)

and priority tax claims under § 507(a)(8), which are unclassified and treated in Section III,

above). For instructions on voting, see Part 2 of the Disclosure Statement. If any Class does not

vote to accept the Plan, then each claim in the non-accepting class will be paid in full on the

Effective Date (except to the extent a holder of a claim in the class agrees to other terms).

**Debtor's only priority claims are listed in Section III, above.**

# VI.
## CLASS 1: SECURED CLAIMS ON DEBTOR'S PRINCIPAL RESIDENCE

Some Debtors have secured claims on a principal residence. Such claims could be impaired or unimpaired. Each separate secured class, below, is identified as "Class 1" with the addition of a letter indicating separate classes a through f.

| CLASS 1(a) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Wells Fargo Bank, N.A.**<br><br>POC: Claim 3<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>First Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $1,371,856.51<br><br>Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |

| CLASS 1(b) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **John B. Reynolds Testamentary Trust (Monica Gardner, Trustee, c/o Allen Gardner, Esq.)**<br><br>POC: Claim 5<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors | Claimant is voluntarily waiving payment of secured claim from bankruptcy estate pursuant to settlement agreement of the parties. | A trust entitled the Dorothy Reynolds Cost Trust (hereinafter DRC) will pay the John B. Reynolds Testamentary Trust (hereinafter the JBR Trust) the equivalent in funds to retire the entire second lien on the property in the amount of $240,701.92. This payment is contingent on plan confirmation and the approval of interested state court(s).<br><br>The JBR Trust agrees that its lien is |

| Summerland Market, Inc. and Elian Hanna | | therefore satisfied upon such payment. |
| Second Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108 | | The JBR Trust will also pay $78,000 to secured creditors Summerland Market, Inc. and Elian Hanna within 20 calendar days of approval by all required courts. |
| Estimated Secured Claim: $240,701.92 | | |
| Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior lien in the amount of $1,371,856.51. | | |

| CLASS 1(c) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| **State Board of Equalization** <br><br> POC: Claim 4 <br><br> Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna <br><br> Third Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108 <br><br> Estimated Secured Claim: $126,218.82 <br><br> Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,498,075.33. Actual senior secured creditors pursuant to treatment of Class 1(b) is $1,371,856.51. | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |

| CLASS 1(d) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Cohn Stewart**<br><br>POC: No Proof of Claim<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>Fourth Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $20,000.00<br><br>Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,624,294.15. Actual senior secured creditors pursuant to treatment of Class 1(b) amount to senior liens of $1,498,075.33. | Unimpaired to the extent that any secured claim by Cohn Stewart survives legal challenge by the combined efforts of secured creditors Summerland Market, Inc. and Elian Hanna as well as Debtor since attorney did not advise Debtor to consult outside counsel before agreeing to lien for attorney's fees. | Paid as secured and retains security interest to the extent the lien is not set aside by legal challenge from Debtor and other secured creditors following plan confirmation. |

| CLASS 1(e) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Franchise Tax Board**<br><br>POC: Claim 2a<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>Fifth Lien on 670 Romero | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |

| | | |
|---|---|---|
| Canyon Rd., Santa Barbara, CA 93108

Estimated Secured Claim: $1,208.77

Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,644,294.15. Actual senior secured creditors pursuant to treatment of Classes 1(b) and 1(d) amount to senior liens of $1,498,075.33. | | |

| CLASS 1(f) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Summerland Market, Inc. and Elian Hanna**

POC: Claim 8

Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna

Sixth Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108

Estimated Secured Claim: $800,715.90.

Actual Secured Claim Subject to 111(b) Election or Treatment of Undersecured as Unsecured: $2,346,643.53.

Unsecured Portion of Claim: $1,545,927.60. | Partially Secured Judgment | Debtor will quitclaim the real property known as 670 Romero Canyon Rd., Santa Barbara CA 93108 to Summerland Market, Inc., Elian Hanna, or a designated agent of these secured creditors. This transfer includes all right, title, and interest to insurance proceeds or other damages or awards related to the property.

Debtor waives his homestead exemption in this real estate despite having it acknowledged by stipulation before this bankruptcy court. Debtor releases any payment due to him under the homestead.

Debtor will reasonably cooperate in any objection or action taken by Class 1(f) Claimant to object to any disputed liens on the property subject to terms and conditions in a separate memorandum of understanding/term sheet and/or settlement agreement. |

| Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,498,075.33. Actual senior secured creditors pursuant to treatment of Classes 1(b) and 1(d) amount to senior liens of $1,499,284.10. | | |
|---|---|---|

## VII.
## CLASS 3: UNIMPAIRED SECURED CLAIMS
## ON PROPERTY OTHER THAN DEBTOR'S PRINCIPAL RESIDENCE

This class includes claims secured by a lien on property other than the Debtor's principal residence in which Debtor has an interest that is unimpaired under the Plan.

**Debtor has no creditors in Class 3.**

## VIII.
## CLASS 4: UNIMPAIRED SECURED CLAIMS
## ON COLLATERAL TO BE SURRENDERED

This class includes claims secured by a lien on property in which the Debtor has an interest that are unimpaired under the Plan and for which Debtor intends to surrender the collateral.

**Debtor has no creditors in Class 4.**

# IX.
## CLASS 5: IMPAIRED SECURED CLAIMS

The following classes include claims secured by a lien on property other than the debtor's principal residence in which Debtor has an interest, other than the secured claims in Class 2 and the unimpaired secured claims in Classes 3 and 4.

**CLASS 5(a)**

| CLASS 5(a) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| Summerland Market, Inc. and Elian Hanna (Also Class 1(f) Claimant)<br><br>POC: Claim 8<br><br>Debtor is transferring all charitable remainder trust distributions actually made and in debtor's possession in the amount of $20,000 to administrative expenses (attorney's fees) and $82,000 to Class 5(a) Claimant. Because the distributed charitable remainder funds are subject to security and state law orders in favor of secured creditor and Class 1(f)/5(a) Claimant, the consent of this claimant was required and has been obtained to set aside the amount of $20,000 from these funds for payment of approved attorney's fees for bankruptcy estate counsel.<br><br>Secured Portion of Claimant's Secured Claim After Treatment in Class 1(f): $1,545,927.60.<br><br>Remaining Unsecured Portion after Payment in this Class: $1,463,927.60 | Partially Secured Judgment | Secured creditors Summerland Market, Inc. and Elian Hanna will accede to the interest of the bankruptcy estate and Debtor by quitclaim. Other terms are specified in the settlement agreement. |

| Estimated Value of Collateral: $102,000 | | |
|---|---|---|

If a secured creditor disputes the value of its collateral as stated above, that secured creditor must timely file an objection to confirmation of the Plan, or the value stated by Debtor may be determined to be the value of the collateral. The objection must be accompanied by competent evidence of valuation. If the value of the collateral is disputed, the court may schedule a separate hearing to determine value.

The Debtor reserves the right to sell or refinance any or all of the property subject to security agreements and repay the balance then unpaid of the allowed secured amount to the pertinent creditor in full satisfaction of their secured obligation.  The lien securing the pertinent allowed secured amount or total amount claimed shall be extinguished and expunged immediately upon such payment.

## X.
## CLASS 6: GENERAL UNSECURED CLAIMS

### CLASS 6(a)

Class 6(a) consists of smaller unsecured claims.  This class includes any allowed unsecured claim of $1,000 or less and any allowed unsecured claim larger than $1,000 but whose holder agrees to reduce its claim to $1,000.  Each member of this class shall receive, on the Effective Date, or as soon as practical thereafter, a single payment equal to 90% of the allowed claim or 90% of $1,000, if the holder has agreed to reduce a claim to $1,000.  **This class is impaired and entitled to vote.**

**Only the general unsecured portion of the claim of the Franchise Tax Board falls into this category. That amount, according to the Proof of Claim, $242.33.** Marborg

1   Industries has filed a Proof of Claim (Claim Number 6) for trash service in the amount of

2   $1,694.11. Debtor hopes, by stipulation of the parties, to treat this claim as $1,000 so that it may

3   be included in Class 6(a). If such a stipulation is filed, the sum of the payments due to Class 6(a)

4   creditors on the Effective Date, at the 90% payment rate, is **$1,118.10.**

5

6                                    **CLASS 6(b)**

7           Class 6(b) is composed of other general unsecured creditors who do not qualify for Class

8   6(a).  This class includes all allowed unsecured claims not in Class 6(a) and not entitled to

9   priority.  Each member of Class 6(b) shall be paid .009% of its claim over three years in equal

10  monthly installments, due on the first day of each calendar month.  **This class is impaired and**

11  **entitled to vote.**

12          Class 6(b) consists of the following creditors and the amount each is to be paid under the

13  Confirmed Plan is provided. The following proposed payments are based on a pro-rata

14  distribution from the CRT 1 beginning in month 47 of the 60 month plan in the amount of

15  $1,295.67 per month. The total general unsecured claims are **$2,083,860.40**. The total projected

16  payment to general unsecured creditors, on the assumptions provided herein regarding

17  professional fees and court approval, is **$18,139.38.**

18

19

| Summerland Market, Inc. and Elian Hanna | Proof of Claim 8 | Claim amount remaining after payment from security in residence (Class 1(f)) and security in distributed charitable remainder trust proceeds (Class 5(a)): **$1,463,927.60** |
|---|---|---|
| | | This represents 70.25% of the general unsecured claims. |
| | | In months 47 through 60 of the Plan Summerland Market, Inc., and Elian Hanna, as to the general unsecured portion |

| | | of the claim, shall receive **$910.21** per month. |
| --- | --- | --- |
| Rose T. Robertson Trust, Sharon Kussman, Trustee | Proof of Claim 7 | Claim amount: **$581,951.09**. Monthly payment of $216 for 36 payments beginning on the first day of the calendar month following the Effective Date and due on the first of each month thereafter.<br><br>This represents 27.92% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan the Rose T. Robertson Trust, Sharon Kussman, Trustee, shall receive **$361.75** per month. |
| Greenberg Glusker | Proof of Claim 9 | Claim amount: **$34,506.84**. Monthly payment of $131 for 36 payments beginning on the first day of the calendar month following the Effective Date and due on the first of each month thereafter.<br><br>This represents 1.65% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan Greenberg Glusker, shall receive **$21.38** per month. |
| Franchise Tax Board General Unsecured Portion | Proof of Claim 2a | Claim amount: **$3,475.03.**<br><br>This represents 0.18% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan the Franchise Tax Board shall receive $**2.33** per month. |

| | | |
|---|---|---|

These distribution amounts shall be adjusted pro rata to account for any change in the amount of professional fees allowed by the Court.

## XI.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A disputed claim is a claim that has not been allowed or disallowed and as to which either:

- a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or

- no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

No distribution will be made on account of that portion of a claim that is disputed unless it is allowed by final nonappealable order.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $10,000, in which case no court approval is necessary.

Unless a creditor's claim has been expressly allowed by order of the bankruptcy court, no creditor should rely or expect that his or her claim will be allowed in full when voting on the Plan.  Anticipated claim objections include, but are not limited to, the following:

1. Duplicate claims;

2. Claims which have been paid in full;

3. Claims lacking adequate documentation or support;

4. Untimely claims;

5. Claims as to which there is a disputed amount because of errors in the revenue distribution;

6.  Claims which are unenforceable against the Debtors;

7.  Claims for improper or unreasonable attorney's fees, charges, or costs;

8.  Issues with "transfers" (we covered in Rome);

9.  Setoff claims asserted by the United States;

10. Equipment lessor claims that are disguised security agreements;

11. Bodily injury claims in which claimant has failed to establish Debtor's liability;

12. Contingent claims; and,

13. Claims which may be subordinated.

Debtor has the power and authority to settle and compromise any disputed claim with court approval and with compliance with Rule 9019.

**There are no disputed claims subject to a proof of claim. Debtor and various secured creditors dispute that the secured lien of Cohn Stewart, identified in Class 1\*\*, is proper.**

## XII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A Debtor ordinarily assumes executory contracts and unexpired leases enumerated in the Plan or the Disclosure Statement, effective upon the Effective Date.

The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in the Plan or the Disclosure Statement as of the Effective Date. Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 6.

**Debtor assumes no executory contracts or leases.**

# XIII.
## MEANS OF IMPLEMENTATION

Debtor will primarily fund the Plan by his regular monthly payments from his charitable remainder trust, set up by his mother, which is titled the Dorothy Reynolds Cox Charitable Remainder Trust #1 (hereinafter "CRT 1"). CRT 1 is to provide monthly payments to Debtor of $5,182.67 per month until the CRT 1 is exhausted or Debtor predeceases the exhaustion of the CRT 1 corpus. Debtor provides that 25% of each distribution from CRT 1 when made, because it is a  trust subject to spendthrift protection, is provided for creditor claims. Debtor hereby dedicates $1,295.67 of each monthly payment for sixty (60) months to administrative claims that the parties have agreed will be paid after the confirmation of this Chapter 11 Plan and, after the payment in full of such approved claims, as specified herein, that monthly amount will be distributed pro rata to the general unsecured creditors in Class 6(b).

Debtor will live upon and use his Social Security benefit income, which he is now receiving, and which is not subject to creditor claims.

CRT 1 shall resume paying Debtor the amount of $3,887.00 on the next regularly scheduled trust distribution date following the effective date of this Chapter 11 Plan. That is the regular required monthly distribution less 25% for administrative and creditor claims.

Until the court approved attorney's fees of Manfield Law Corporation are paid, 100% of each monthly distribution (that is, the 25% of the monthly CRT 1 distribution in the amount of $1,295.67), shall be paid to Mansfield Law Corporation to pay for deferred administrative attorney's fees. The Debtor and bankruptcy estate counsel have agreed that Mansfield Law Corporation may be paid in this manner after the date of confirmation. This agreement was secured so that Mansfield Law Corporation would not object to confirmation given the inability of the Debtor to pay for attorney's fees on confirmation. The Trustee of the Dorothy Reynolds Cox Charitable Remainder Trust #1 shall make each such payment directly to Mansfield Law

Corporation, 2775 N. Ventura Rd., Suite 201, Oxnard, CA 93036 until approved fees, less the

$20,000 set aside from the cash collateral of Summerland Market, Inc., and Elian Hanna, as

provided above, are paid. If the parties agree to stipulate to reduce the fees of Mansfield Law

Corporation to $80,000, less the $20,000 paid from the cash collateral or set-aside from the funds

otherwise due to Summerland Market, Inc. and Elian Hanna, it will take Debtor 46 months to

pay bankruptcy counsel. The exact portion of the remaining CRT 1 funds available to the general

unsecured creditors will not be known until the court approves (or disapproves) a fee application

from Mansfield Law Corporation.  On the above assumptions, $18,139.38 will be available to

general unsecured creditors.


## XIV.
## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

Upon completion of all payments under the Plan, the Debtor shall receive a discharge of

all preconfirmation debts, whether or not the creditor files a proof of claim, or accepts the Plan,

unless the court orders otherwise. Such discharge will not discharge Debtor from any debts that

are nondischargeable under § 523 or the obligations created by this Plan, except that, by

agreement of the parties, to be presented to the court by stipulation, Summerland Market, Inc.,

and Elian Hanna have agreed that the treatment under this Chapter 11 Plan shall constitute

payment in full on the non-dischargeable claims subject to the judgment in the adversary action

filed by those parties and related to this action. Summerland Market, Inc. and Elian Hanna will

record a satisfaction of judgment in all related actions and the bankruptcy adversary action upon

completion of the Chapter 11 Plan.

On the Effective Date, all property of the estate will vest in the reorganized debtor

pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

Except as otherwise stated in the Plan, the payments promised in the Plan constitute new

contractual obligations that replace those obligations to creditors that existed prior to the

Effective Date. Creditors may not take any action to enforce either preconfirmation obligations

or obligations due under the Plan, so long as the Debtor is not in material default under the Plan.

If the Debtor is in material default under the Plan, affected creditors may: (i) take any action

permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this

case or to convert this case to a chapter 7 bankruptcy case.

If Debtor fails to make any payment required under the Plan, or to perform any other

obligation required under the Plan for more than 14 days after the time specified in the Plan, the

affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of

default. The Debtor is in material default under the Plan if the Debtor fails within 21 days of the

service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the

default or (ii) to obtain from the court an extension of time to cure the default or a determination

that no default occurred.

This court retains jurisdiction until all Plan payments have been made. Debtor may

modify the Plan before confirmation.

Once the estate has been fully administered as described in Bankruptcy Rule 3022, the

Debtor may file a motion with the Court for a final decree.

## XV.

## RISK FACTORS AND TAX CONSEQUENCES

It is difficult to speculate on all of the risks that may exist which may prevent successful

consummation of the plan. Completion of the Plan requires, though cooperation between Debtor

and her creditors, maintaining regular contact information.

Creditors and interest holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and / or advisors.  Mr. X has been retained to file estate tax returns as soon as possible.  Debtor and his counsel cannot and do not represent that the tax consequences below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications for a particular action.

**XVI.**
**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX**. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

**A. Who May Vote or Object**

*1. Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not

everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both allowed for voting pruposes and classified in an impaired class.

### 3. What is an Allowed Claim or Interest?

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if it scheduled on the Debtor's schedules and is not listed as disputed, contingent, or unliquidated, and no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. All claims are specified in the classification section of the disclosure statement.

### 4. What is an Impaired Claim or Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims

is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Debtor believes that classes 1(b), 1(f), 5(a), 6(a), and 6(b) are impaired and that

holders of claims in each of these classes are therefore entitled to vote to accept or reject the

Plan. Parties who dispute the Debtor's characterization of their claim or interest as being

impaired or unimpaired may file an objection to the Plan contending that the Debtor has

incorrectly characterized the class.

## 5. Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been

disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code

Sections 507(a)(l), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any

value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes

are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Sections

507(a)(l), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

and they are required to receive certain treatment specified by the Code. Claims in classes that do

not receive or retain any value under the Plan do not vote because such classes are deemed to

have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

YOU MAY STILL HA VE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE

PLAN.

## 6. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

the secured part of the claim and another ballot for the unsecured claim.

*7. Votes Necessary to Confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cramdown on non-accepting classes.

6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, vote in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**B. Treatment of Nonaccepting Classes**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as a cramdown. The Code allows the Plan to be crammed down on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of l 129(a)(8) and if the Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § l 129(b) and applicable case law.

**C. Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 5, 6( a) or 6(b) if these classes do not vote to accept the Plan.

33

1    Please note that the proposed Plan treatment described by this Disclosure Statement cannot be

2    crammed down on the following classes: None. IF THERE WERE ANY SUCH CLASSES AND

3    IF ANY OF THESE CLASSES DID NOT VOTE TO ACCEPT THE PLAN, THE PLAN

4    WOULD NOT BE CONFIRMED.

5

6

7    **D. Liquidation Analysis**

8        Another confirmation requirement is the "Best Interest Test", which requires a liquidatio

9    analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

10   that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

11   holder must receive or retain under the Plan property of a value not less than the amount that

12   such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the

13   Bankruptcy Code.

14       In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured

15   creditors are paid first from the sales proceeds of properties on which the secured creditor has a

16   lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining

17   sales proceeds, according to their rights to priority. Unsecured creditors with the same priority

18   share in proportion to the amount of their allowed claim in relationship to the amount of total

19   allowed unsecured claims. Finally, interest holders receive the balance that remains after all

20   creditors are paid, if any.

21       For the Court to be able to confirm this Plan, the Court must find that all creditors and

22   interest holders who do not accept the Plan will receive at least as much under the Plan as such

23   holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement

24   is met here for the following reasons: The Plan pays allowed creditors either in full or the

25   liquidation value of all assets of the Chapter 11 estate, unless they consent otherwise.

26       The liquidation value of this case is zero. The residence is fully encumbered. In fact, it is

overencumbered, and judgment creditors are only partially secured. The distributed CRT 1 funds, under current Ninth Circuit caselaw, appears to be a secured interest available to the creditors who obtained relief in state court. The ongoing distributions from the CRT 1 appear to be available to creditors only upon distribution, and then only in the amount of approximately 25% of each distribution. While the future value of those distributions could be estimated as a present value, there is no recovery for unsecured creditors. Secured creditors would argue that the present value is a current secured interest. Secured creditors have released that Claim, Debtor believes, in support of this Chapter 11 Plan.

**E. Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Debtor asserts that he has an agreement to pay his counsel after confirmation, as indicated in the Plan, and that secured creditors have released a portion of the secured or cash collateral interest they have in distributed funds to fund confirmation and pay for administrative expenses and fees. Debtor himself continues to receive Social Security income and will, upon confirmation, have CRT 1 income, though reduced. These funds are sufficient to pay tax obligations, if any, and the United States Trustee.

# VI.
## EFFECT OF CONFIRMATION OF THE PLAN

**A. Discharge**

This Plan provides the Debtor will be discharged of liability for payments of debts incurred before confirmation of the Plan as specified in 11 U.S.C. 1141.

**B. Revesting**

Except as provided herin, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C. Modification of Plan**

The Debtor may modify the Plan at any time before confirmation. The Court may required a new disclosure statement and re-voting on the Plan if that is done. The proponent of the Plan may also seek to modify the Plan after confirmation if the Plan has not been substantially consummated and the Court authorizes the proposed mofidcations after notice and a hearing.

**D. Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

The reorganized debtor's post-confirmation status reports shall reflect all income and disbursements for each quarter or portion thereof while the case remains open, and the

reorganized debtor shall timely pay U.S. Trustee Quarterly Fees pursuant to 28 U.S.C.

§l930(a)(6).


**E. Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under l1 12(b ), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**F. Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.


Dated: April 10, 2018                    Respectfully Submitted,

                                         John Sperry Reynolds

                                          /s/ John Sperry Reynolds
                                         John Sperry Reynolds, DIP


Dated: April 10, 2018                     Presented By,

                                          Mansfield Law Corporation

                                          /s/ Andrew S. Mansfield
                                         Andrew S. Mansfield, Esq.
                                         Attorney for DIP

Exhibit 1

Chapter 11 Plan - Proposed

1 | Andrew S. Mansfield SBN 174556
MANSFIELD LAW CORPORATION
2 | 2775 N. Ventura Road, Suite 201
Oxnard, California 93036
3 | Telephone:     (805) 642-6406
Facsimile:      (805) 642-4648
4 | amansfield@mansfield.law

5 | Attorney for Debtor John Sperry Reynolds

6

7

8 |                  UNITED STATES BANKRUPTCY COURT

9 |        CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

10

11

12 | John Sperry Reynolds,

13 |            Debtor in Possession,

Case No. 9:16-bk-11042-DS

Chapter 11

14 | **INDIVIDUAL DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

15

16 | <u>HEARING DATE</u>

17 | Date:   TO BE SET

18

19

20

21

22

23

24

25

26

27

28

# I.
## INTRODUCTION

On June 6, 2016, John Sperry Reynolds ("Debtor-in-Possession" or "Debtor") filed a voluntary Chapter 11 Petition seeking protection under the United States Bankruptcy Code ("the Code"), beginning at 11 U.S.C. § 101.  Debtors seeking relief in Chapter 11 are given an opportunity to propose a plan of reorganization ("the Plan").  The Plan proposed by Debtor provides for the restructuring of his debts by surrendering certain real and personal property to secured creditors and providing payment over five years to bankruptcy estate attorney fees, paid as administrative claims, and to general unsecured creditors.  If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim, accept the Plan, object to confirmation, or have their claims allowed. All Creditors should refer to Articles I-XIV of this Plan for the precise treatment of their claims. A disclosure statement (the Disclosure Statement) that provides additional information is being served with this Plan. The Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

This plan allows Debtor to receive his ongoing Social Security benefit (not subject to creditor claims) and a distribution from the Dorothy Reynolds Cox Charitable Remainder Trust #1 (also referred to herein as CRT 1), subject to creditor claims in the amount of 25% of each distribution as received.  The Effective Date of the Plan is the fifth day following the entry of an order confirming the Debtor's Chapter 11 plan, as further detailed in this Plan.

This Plan provides for seven classes of secured claimants and two classes of unsecured creditors.  Unsecured creditors holding allowed claims will receive distributions, which Debtor, as proponent of this Plan, estimates to provide 0.009 cents on the dollar of obligation.  This estimate is subject to the amount that the Court allows, upon application, for attorney's fees for

Mansfield Law Corporation. The number above, as explained herein, is based on an estimate that

Mansfield Law Corporation and Debtor will agree to reduce attorney's fees to $80,000 and that

secured creditor Summerland Market, Inc. and Elian Hanna have provided consent that $20,000

of cash collateral made up of funds already distributed from CRT 1 and in a holding account

with the CRT 1 Trustee, as further detailed below, may be used to pay the attorney fees of

Mansfield Law Corporation after such fees are approved. This Plan also provides for the

payment of attorney fees and the fees of the United States Trustee.

## II.
## GENERAL PROVISIONS

### A. Definitions and Rules of Construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall

apply when terms defined or construed in the Code are used in this Plan.  The definitions are

supplemented by the definitions set forth in this document and in the accompanying disclosure

statement.

### B. Effective Date of Plan

The effective date of this Plan is the fifth business day following the date of the entry of

the order of confirmation.  If a stay of the confirmation order is in effect on the date that would

otherwise be the Effective Date, the Effective Date will be the first business date after that date

on which no stay of the confirmation order is in effect.

### C. Severability

If any provision in this Plan is determined to be unenforceable, the determination will in

no way limit or affect the enforceability and operative effect of any other provision of this Plan.

1

2    **D. Binding Effect**

3           The rights and obligations of any entity named or referred to in this Plan will be binding

4    upon, and will inure to the benefit of, the successors and assigns of such entity.

5

6

7    **E. Captions**

8           The headings contained in this Plan are for convenience of reference only and do no

9    affect the meaning or the interpretation of the Plan.

10

11   **F. Controlling Effect**

12          Unless a rule of law or procedure is supplied by federal law (including the Code or the

13   Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and

14   any agreements, documents and instruments executed in connection with this Plan, except as

15   otherwise provided in this Plan.

16

17

18                                        **III.**
19          **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

20   **A. General Overview**

21

22          As required by the Bankruptcy Code, the Plan classifies claims and interests in various

23   classes according to their right to priority of payments as provided in the Bankruptcy Code.  The

24   Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan

25   provides the treatment each class will receive under the Plan.

26

27   **B. Unclassified Claims**

28          Certain types of claims are not placed into voting classes; instead they are unclassified.

They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, Debtor, as proponent of the Plan, has not placed administrative expenses in a class.

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  Holders of administrative expenses under 11 U.S.C. § 507(b) are paid before other administrative expenses.

**1. Professional Fees.** Professional fees may only be paid upon application to and approval by the court. The Debtor will pay professional fees in the amount of $20,000 when approved by the court and the balance approved by the court over sixty payments, with administrative claims, in the form of approved attorney's fees, paid before other claimants, including general unsecured creditors. Attorney Andrew S. Mansfield, counsel for Debtor-in-Possession, has agreed to these terms in place of payment in full on confirmation of the Plan. The source of the initial $20,000 from distributed trust funds is detailed herein.

The total amount of projected professional fees will be subject to Court approval and review.

**2. Other Administrative Claims.** The Debtor will pay other claims allowed under § 503(b) and entitled to priority under § 507(a)(2), United States Trustee fees, in full on the Effective Date (although expenses arising and paid in the ordinary course of Debtor's financial affairs may be paid as due), except to the extent that a holder of these claims agrees to other terms.

**3. Tax Claims.** Debtor has the following pre-petition tax obligations.

| Name / Party | Amount of Expense | Secured | Priority | General Unsecured |
|---|---|---|---|---|
| Franchise Tax Board (Proof of Claim 2a) | $6,576.65 | $1,208.77 | $684.08 | $4,683.80 (Only this Amount is Subject to Class 6(b)) |
| State Board of Equalization (Proof of Claim 4) | $126,461.15 | $126,218.82 | $0.00 | $242.33 (Only this Amount is Subject to Class 6(b)) |

**4. Involuntary Gap Period Claims pursuant to § 507(a)(3).** The Debtor will pay claims allowed under § 502(f) in full on, or as soon as practicable after, the Effective Date except to the extent a holder of such claim agrees to other terms.

Most administrative claims have been paid from the DIP Loan pursuant to Stipulation and on approval of the Court.

**5. Total Administrative and Priority Claims.** The following chart lists Debtor's administrative claims and their treatment under the Plan:

| Name / Party | Amount of Expense | Source of Approval or Authority | Treatment |
|---|---|---|---|
| Mansfield Law Corporation, Andrew S. Mansfield | $91,737 (estimated). This balance is net of pre-petition retainer. | Employment approved by Order of the Court. | Subject to Court approval. Due on Effective Date. |
| Office of the United States Trustee | $650 per quarter (estimated). | 28 U.S.C. § 1930(a)(6) | Quarterly fees shall be paid until final decree is entered. |

| Name / Party | Amount of Expense | Secured | Priority | General Unsecured |
|---|---|---|---|---|
| Franchise Tax Board (Proof of Claim 2a) | $6,576.65 | $1,208.77 | $684.08 | $4,683.80 |
| State Board of Equalization (Proof of Claim 4) | $126,461.15 | $126,218.82 | $0.00 | $242.33 |

1    Total Remaining Administrative Claims (Estimated): $220,498.67. Note that this amount

2    includes $127,427.59 already secured against Debtor's residence.

3

4                                        **IV.**

5                         **SECTION 111(b) ELECTION**

6            Under Section 1111(b) of the Bankruptcy Code, a partially secured creditor may elect to

7    be considered a full recourse creditor and to receive payment based on the total amount of its

8    allowed claim.  However, under section 1129(a)(7)(B), the recovery of a secured creditor who

9    makes such election may be limited to payment of the full amount of its allowed claim without

10   interest, which may result in a lower payment amount than what the Debtor otherwise proposes.

11   Holders of secured claims are advised to consult their own counsel to evaluate whether or not it

12   is in their best interest to make the election.  Federal Rule of Bankruptcy Procedure 3014 states

13   that such election must be made prior to the conclusion of the hearing on the disclosure

14   statement.  If this election is made by any claimholder, Debtor proposes to make required

15   payments to such claimholder over the term of 60 months.

16

17

18                                       **V.**

19                         **CLASS 3: PRIORITY CLAIMS**

20           These impaired classes include allowed unsecured claims entitled to priority under § 507

21   (except administrative claims under § 507(a)(2), involuntary gap period claims under § 507(a)(3)

22   and priority tax claims under § 507(a)(8), which are unclassified and treated in Section III,

23   above). For instructions on voting, see Part 2 of the Disclosure Statement. If any Class does not

24   vote to accept the Plan, then each claim in the non-accepting class will be paid in full on the

25   Effective Date (except to the extent a holder of a claim in the class agrees to other terms).

26           **Debtor's only priority claims are listed in Section III, above.**

27

28

# VI.
## CLASS 1: SECURED CLAIMS ON DEBTOR'S PRINCIPAL RESIDENCE

Some Debtors have secured claims on a principal residence. Such claims could be impaired or unimpaired. Each separate secured class, below, is identified as "Class 1" with the addition of a letter indicating separate classes a through f.

| CLASS 1(a) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| **Wells Fargo Bank, N.A.**<br><br>POC: Claim 3<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>First Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $1,371,856.51<br><br>Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |

| CLASS 1(b) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| **John B. Reynolds Testamentary Trust (Monica Gardner, Trustee, c/o Allen Gardner, Esq.)**<br><br>POC: Claim 5<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors | Claimant is voluntarily waiving payment of secured claim from bankruptcy estate pursuant to settlement agreement of the parties. | A trust entitled the Dorothy Reynolds Cox Trust (hereinafter DRC) will pay the John B. Reynolds Testamentary Trust (hereinafter the JBR Trust) the equivalent in funds to retire the entire second lien on the property in the amount of $240,701.92. This payment is contingent on plan confirmation and the approval of interested state court(s).<br><br>The JBR Trust agrees that its lien is |

| Summerland Market, Inc. and Elian Hanna | | therefore satisfied upon such payment. |
| --- | --- | --- |
| Second Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108 | | The JBR Trust will also pay $78,000 to secured creditors Summerland Market, Inc. and Elian Hanna within 20 calendar days of approval by all required courts. |
| Estimated Secured Claim: $240,701.92 | | |
| Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior lien in the amount of $1,371,856.51. | | |

| CLASS 1(c) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| **State Board of Equalization** | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |
| POC: Claim 4 | | |
| Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna | | |
| Third Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108 | | |
| Estimated Secured Claim: $126,218.82 | | |
| Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,498,075.33. Actual senior secured creditors pursuant to treatment of Class 1(b) is $1,371,856.51. | | |

9

| CLASS 1(d) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Cohn Stewart**<br><br>POC: No Proof of Claim<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>Fourth Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $20,000.00<br><br>Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,624,294.15. Actual senior secured creditors pursuant to treatment of Class 1(b) amount to senior liens of $1,498,075.33. | Unimpaired to the extent that any secured claim by Cohn Stewart survives legal challenge by the combined efforts of secured creditors Summerland Market, Inc. and Elian Hanna as well as Debtor since attorney did not advise Debtor to consult outside counsel before agreeing to lien for attorney's fees. | Paid as secured and retains security interest to the extent the lien is not set aside by legal challenge from Debtor and other secured creditors following plan confirmation. |

| CLASS 1(e) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Franchise Tax Board**<br><br>POC: Claim 2a<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>Fifth Lien on 670 Romero | Unimpaired | Secured creditors Summerland Market, Inc. and Elian Hanna will take the real property interest of the bankruptcy estate and Debtor by quitclaim. Wells Fargo Bank, N.A. will obtain satisfaction from Summerland Market, Inc. or Elian Hanna or exercise its already present right to foreclose under state law. |

| | | |
|---|---|---|
| Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $1,208.77<br><br>Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,644,294.15. Actual senior secured creditors pursuant to treatment of Classes 1(b) and 1(d) amount to senior liens of $1,498,075.33. | | |

| CLASS 1(f) Claimant | IMPAIRMENT | TREATMENT |
|---|---|---|
| **Summerland Market, Inc. and Elian Hanna**<br><br>POC: Claim 8<br><br>Debtor is transferring all estate interest in real property that constitutes his residence to secured creditors Summerland Market, Inc. and Elian Hanna<br><br>Sixth Lien on 670 Romero Canyon Rd., Santa Barbara, CA 93108<br><br>Estimated Secured Claim: $800,715.90.<br><br>Actual Secured Claim Subject to 111(b) Election or Treatment of Undersecured as Unsecured: $2,346,643.53.<br><br>Unsecured Portion of Claim: $1,545,927.60. | Partially Secured Judgment | Debtor will quitclaim the real property known as 670 Romero Canyon Rd., Santa Barbara CA 93108 to Summerland Market, Inc., Elian Hanna, or a designated agent of these secured creditors. This transfer includes all right, title, and interest to insurance proceeds or other damages or awards related to the property.<br><br>Debtor waives his homestead exemption in this real estate despite having it acknowledged by stipulation before this bankruptcy court. Debtor releases any payment due to him under the homestead.<br><br>Debtor will reasonably cooperate in any objection or action taken by Class 1(f) Claimant to object to any disputed liens on the property subject to terms and conditions in a separate memorandum of understanding/term sheet and/or settlement agreement. |

| Estimated Value of Collateral: $2,300,000 per appraisal of secured creditors Summerland Market, Inc. and Elian Hanna. Senior liens in the amount of $1,498,075.33. Actual senior secured creditors pursuant to treatment of Classes 1(b) and 1(d) amount to senior liens of $1,499,284.10. | | |
|---|---|---|

## VII.
## CLASS 3: UNIMPAIRED SECURED CLAIMS
## ON PROPERTY OTHER THAN DEBTOR'S PRINCIPAL RESIDENCE

This class includes claims secured by a lien on property other than the Debtor's principal residence in which Debtor has an interest that is unimpaired under the Plan.

**Debtor has no creditors in Class 3.**

## VIII.
## CLASS 4: UNIMPAIRED SECURED CLAIMS
## ON COLLATERAL TO BE SURRENDERED

This class includes claims secured by a lien on property in which the Debtor has an interest that are unimpaired under the Plan and for which Debtor intends to surrender the collateral.

**Debtor has no creditors in Class 4.**

# IX.
## CLASS 5: IMPAIRED SECURED CLAIMS

The following classes include claims secured by a lien on property other than the debtor's principal residence in which Debtor has an interest, other than the secured claims in Class 2 and the unimpaired secured claims in Classes 3 and 4.

### CLASS 5(a)

| CLASS 5(a) Claimant | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| Summerland Market, Inc. and Elian Hanna (Also Class 1(f) Claimant)<br><br>POC: Claim 8<br><br>Debtor is transferring all charitable remainder trust distributions actually made and in debtor's possession in the amount of $20,000 to administrative expenses (attorney's fees) and $82,000 to Class 5(a) Claimant. Because the distributed charitable remainder funds are subject to security and state law orders in favor of secured creditor and Class 1(f)/5(a) Claimant, the consent of this claimant was required and has been obtained to set aside the amount of $20,000 from these funds for payment of approved attorney's fees for bankruptcy estate counsel.<br><br>Secured Portion of Claimant's Secured Claim After Treatment in Class 1(f): $1,545,927.60.<br><br>Remaining Unsecured Portion after Payment in this Class: $1,463,927.60 | Partially Secured Judgment | Secured creditors Summerland Market, Inc. and Elian Hanna will accede to the interest of the bankruptcy estate and Debtor by quitclaim. Other terms are specified in the settlement agreement. |

13

| Estimated Value of Collateral: $102,000 | | |
|---|---|---|

If a secured creditor disputes the value of its collateral as stated above, that secured creditor must timely file an objection to confirmation of the Plan, or the value stated by Debtor may be determined to be the value of the collateral. The objection must be accompanied by competent evidence of valuation. If the value of the collateral is disputed, the court may schedule a separate hearing to determine value.

The Debtor reserves the right to sell or refinance any or all of the property subject to security agreements and repay the balance then unpaid of the allowed secured amount to the pertinent creditor in full satisfaction of their secured obligation.  The lien securing the pertinent allowed secured amount or total amount claimed shall be extinguished and expunged immediately upon such payment.

## X.
## CLASS 6: GENERAL UNSECURED CLAIMS

### CLASS 6(a)

Class 6(a) consists of smaller unsecured claims.  This class includes any allowed unsecured claim of $1,000 or less and any allowed unsecured claim larger than $1,000 but whose holder agrees to reduce its claim to $1,000.  Each member of this class shall receive, on the Effective Date, or as soon as practical thereafter, a single payment equal to 90% of the allowed claim or 90% of $1,000, if the holder has agreed to reduce a claim to $1,000.  **This class is impaired and entitled to vote.**

**Only the general unsecured portion of the claim of the Franchise Tax Board falls into this category. That amount, according to the Proof of Claim, $242.33.** Marborg

Industries has filed a Proof of Claim (Claim Number 6) for trash service in the amount of $1,694.11. Debtor hopes, by stipulation of the parties, to treat this claim as $1,000 so that it may be included in Class 6(a). If such a stipulation is filed, the sum of the payments due to Class 6(a) creditors on the Effective Date, at the 90% payment rate, is **$1,118.10.**

## CLASS 6(b)

Class 6(b) is composed of other general unsecured creditors who do not qualify for Class 6(a). This class includes all allowed unsecured claims not in Class 6(a) and not entitled to priority. Each member of Class 6(b) shall be paid .009%of its claim over three years in equal monthly installments, due on the first day of each calendar month. **This class is impaired and entitled to vote.**

Class 6(b) consists of the following creditors and the amount each is to be paid under the Confirmed Plan is provided. The following proposed payments are based on a pro-rata distribution from the CRT 1 beginning in month 47 of the 60 month plan in the amount of $1,295.67 per month. The total general unsecured claims are **$2,083,860.40**. The total projected payment to general unsecured creditors, on the assumptions provided herein regarding professional fees and court approval, is **$18,139.38.**

| Summerland Market, Inc. and Elian Hanna | Proof of Claim 8 | Claim amount remaining after payment from security in residence (Class 1(f)) and security in distributed charitable remainder trust proceeds (Class 5(a)): **$1,463,927.60**<br><br>This represents 70.25% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan Summerland Market, Inc., and Elian Hanna, as to the general unsecured portion |

| | | of the claim, shall receive **$910.21** per month. |
| --- | --- | --- |
| Rose T. Robertson Trust, Sharon Kussman, Trustee | Proof of Claim 7 | Claim amount: **$581,951.09**. Monthly payment of $216 for 36 payments beginning on the first day of the calendar month following the Effective Date and due on the first of each month thereafter.<br><br>This represents 27.92% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan the Rose T. Robertson Trust, Sharon Kussman, Trustee, shall receive **$361.75** per month. |
| Greenberg Glusker | Proof of Claim 9 | Claim amount: **$34,506.84**. Monthly payment of $131 for 36 payments beginning on the first day of the calendar month following the Effective Date and due on the first of each month thereafter.<br><br>This represents 1.65% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan Greenberg Glusker, shall receive **$21.38** per month. |
| Franchise Tax Board General Unsecured Portion | Proof of Claim 2a | Claim amount: **$3,475.03.**<br><br>This represents 0.18% of the general unsecured claims.<br><br>In months 47 through 60 of the Plan the Franchise Tax Board shall receive $**2.33** per month. |

|  |  |  |
|---|---|---|

These distribution amounts shall be adjusted pro rata to account for any change in the amount of professional fees allowed by the Court.

## XI.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A disputed claim is a claim that has not been allowed or disallowed and as to which either:

- a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or

- no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

No distribution will be made on account of that portion of a claim that is disputed unless it is allowed by final nonappealable order.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $10,000, in which case no court approval is necessary.

Unless a creditor's claim has been expressly allowed by order of the bankruptcy court, no creditor should rely or expect that his or her claim will be allowed in full when voting on the Plan.  Anticipated claim objections include, but are not limited to, the following:

1. Duplicate claims;

2. Claims which have been paid in full;

3. Claims lacking adequate documentation or support;

4. Untimely claims;

5. Claims as to which there is a disputed amount because of errors in the revenue distribution;

6.  Claims which are unenforceable against the Debtors;

7.  Claims for improper or unreasonable attorney's fees, charges, or costs;

8.  Issues with "transfers" (we covered in Rome);

9.  Setoff claims asserted by the United States;

10. Equipment lessor claims that are disguised security agreements;

11. Bodily injury claims in which claimant has failed to establish Debtor's liability;

12. Contingent claims; and,

13. Claims which may be subordinated.

Debtor has the power and authority to settle and compromise any disputed claim with court approval and with compliance with Rule 9019.

**There are no disputed claims subject to a proof of claim. Debtor and various secured creditors dispute that the secured lien of Cohn Stewart is proper.**

## XII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A Debtor ordinarily assumes executory contracts and unexpired leases enumerated in the Plan or the Disclosure Statement, effective upon the Effective Date.

The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in the Plan or the Disclosure Statement as of the Effective Date. Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 6.

**Debtor assumes no executory contracts or leases.**

## XIII.
## MEANS OF IMPLEMENTATION

Debtor will primarily fund the Plan by his regular monthly payments from his charitable

remainder trust, set up by his mother, which is titled the Dorothy Reynolds Cox Charitable

Remainder Trust #1 (hereinafter "CRT 1"). CRT 1 is to provide monthly payments to Debtor of

$5,182.67 per month until the CRT 1 is exhausted or Debtor predeceases the exhaustion of the

CRT 1 corpus. Debtor provides that 25% of each distribution from CRT 1 when made, because it

is a  trust subject to spendthrift protection, is provided for creditor claims. Debtor hereby

dedicates $1,295.67 of each monthly payment for sixty (60) months to administrative claims that

the parties have agreed will be paid after the confirmation of this Chapter 11 Plan and, after the

payment in full of such approved claims, as specified herein, that monthly amount will be

distributed pro rata to the general unsecured creditors in Class 6(b).

Debtor will live upon and use his Social Security benefit income, which he is now

receiving, and which is not subject to creditor claims.

CRT 1 shall resume paying Debtor the amount of $3,887.00 on the next regularly

scheduled trust distribution date following the effective date of this Chapter 11 Plan. That is the

regular required monthly distribution less 25% for administrative and creditor claims.

Until the court approved attorney's fees of Manfield Law Corporation are paid, 100% of

each monthly distribution (that is, the 25% of the monthly CRT 1 distribution in the amount of

$1,295.67), shall be paid to Mansfield Law Corporation to pay for deferred administrative

attorney's fees. The Debtor and bankruptcy estate counsel have agreed that Mansfield Law

Corporation may be paid in this manner after the date of confirmation. This agreement was

secured so that Mansfield Law Corporation would not object to confirmation given the inability

of the Debtor to pay for attorney's fees on confirmation. The Trustee of the Dorothy Reynolds

Cox Charitable Remainder Trust #1 shall make each such payment directly to Mansfield Law

Corporation, 2775 N. Ventura Rd., Suite 201, Oxnard, CA 93036 until approved fees, less the

$20,000 set aside from the cash collateral of Summerland Market, Inc., and Elian Hanna, as

provided above, are paid. If the parties agree to stipulate to reduce the fees of Mansfield Law

Corporation to $80,000, less the $20,000 paid from the cash collateral or set-aside from the funds

otherwise due to Summerland Market, Inc. and Elian Hanna, it will take Debtor 46 months to

pay bankruptcy counsel. The exact portion of the remaining CRT 1 funds available to the general

unsecured creditors will not be known until the court approves (or disapproves) a fee application

from Mansfield Law Corporation.  On the above assumptions, $18,139.38 will be available to

general unsecured creditors.


## XIV.
## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

Upon completion of all payments under the Plan, the Debtor shall receive a discharge of

all preconfirmation debts, whether or not the creditor files a proof of claim, or accepts the Plan,

unless the court orders otherwise. Such discharge will not discharge Debtor from any debts that

are nondischargeable under § 523 or the obligations created by this Plan, except that, by

agreement of the parties, to be presented to the court by stipulation, Summerland Market, Inc.,

and Elian Hanna have agreed that the treatment under this Chapter 11 Plan shall constitute

payment in full on the non-dischargeable claims subject to the judgment in the adversary action

filed by those parties and related to this action. Summerland Market, Inc. and Elian Hanna will

record a satisfaction of judgment in all related actions and the bankruptcy adversary action upon

completion of the Chapter 11 Plan.

On the Effective Date, all property of the estate will vest in the reorganized debtor

pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

Except as otherwise stated in the Plan, the payments promised in the Plan constitute new

contractual obligations that replace those obligations to creditors that existed prior to the Effective Date. Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in material default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.

This court retains jurisdiction until all Plan payments have been made. Debtor may modify the Plan before confirmation.

Once the estate has been fully administered as described in Bankruptcy Rule 3022, the Debtor may file a motion with the Court for a final decree.

## XV.

## RISK FACTORS AND TAX CONSEQUENCES

It is difficult to speculate on all of the risks that may exist which may prevent successful consummation of the plan. Completion of the Plan requires, though cooperation between Debtor and her creditors, maintaining regular contact information.

1        Creditors and interest holders concerned with how the Plan may affect their tax liability

2  should consult with their own accountants, attorneys, and / or advisors.  Mr. X has been retained

3  to file estate tax returns as soon as possible.  Debtor and his counsel cannot and do not represent

4  that the tax consequences below are the only tax consequences of the Plan because the Tax Code

5  embodies many complicated rules which make it difficult to state completely and accurately all

6  

7  the tax implications for a particular action.

8  

9  

10  Dated: _____                    John Sperry Reynolds

11  

12                                              _____

                                        John Sperry Reynolds, DIP

13  

14  Dated: _____                    Mansfield Law Corporation

15                                            _____

Andrew S. Mansfield, Esq.

16                                            Attorney for DIP

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28